UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____             │
│ DATE FILED:___3/24/2021___       │
└─────────────────────────────────┘
```

RAYMOND J. PARDO,

                                    Plaintiff,

        -v-

KIRSTJEN NIELSEN, *Secretary, Department of Homeland Security*,

                                    Defendant.

No. 19-cv-616 (MKV)

OPINION AND ORDER
GRANTING
SUMMARY JUDGMENT
TO DEFENDANT

MARY KAY VYSKOCIL, District Judge:

        Plaintiff Raymond Pardo was a Customs and Border Patrol ("CBP") officer.  He suffered

a serious on-the-job injury, and, after five years of leave, CBP removed him.  Pardo challenged

his removal before the Merit System Protection Board ("MSPB"), which upheld CBP's decision.

Pardo brings this action challenging the MSPB decision and asserting discrimination claims.

Before the Court are the parties' cross-motions for summary judgment.  For the reasons set forth

below, Defendant's motion is GRANTED, and Pardo's motion is DENIED.

I.        BACKGROUND[1]

A.  Facts

        Plaintiff Raymond Pardo began his career with the United States Customs Service, the

predecessor agency to Customs and Border Patrol ("CBP"), in 1984.  Def. 56.1 ¶ 1; Pl. 56.1 ¶ 1.

Over the next three decades, Pardo received numerous awards and accolades for his work.  *See*

---

[1] The facts are taken from the parties' Local Civil Rule 56.1 statements [ECF #46 ("Def. 56.1"), 60 ("Pl. 56.1")], the declarations submitted in connection with these motions and exhibits attached thereto [ECF #47, 48, 49, 50, 62], and documents in the MSPB administrative record [ECF #43, 43-1–43-10].  The administrative record is bates stamped AR_000001 to AR_002102, and the Court cites the documents by bates number.  Unless otherwise noted, where only one party's 56.1 statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely disagrees with the inferences to be drawn from that fact.

AR_000093–000099; Def. 56.1 ¶ 107; Pl. 56.1 ¶¶ 107, 143 (stating that, in Pardo's "30+ years of distinguished service, . . . he was the recipient of over 100 awards"). In 2011, Pardo was a CBP Officer assigned to the Port of Newark, New Jersey. Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2. The position has medical standards and physical requirements, including the ability to qualify and maintain proficiency with a firearm. *See* Def. 56.1 ¶¶ 3, 6, 7, 8, 9; Pl. 56.1 ¶¶ 3, 6, 7, 8, 9. In November 2011, Pardo suffered a serious injury to his shoulder when he fell from a ladder while searching a ship. Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11. After undergoing surgery in January 2012, Pardo never returned to work. Def. 56.1 ¶ 12; Pl. 56.1 ¶ 12.

Pardo remained on leave for five years, but, in 2017, CBP "removed" him. Def. 56.1 ¶ 14; Pl. 56.1 ¶ 14. Specifically, from January 2012 to December 2012, Pardo used accrued sick and annual leave. Def. 56.1 ¶ 13; Pl. 56.1 ¶ 13. Then, from December 2012 until February 2017, CBP "carried [Pardo] in Leave Without Pay . . . status" while the Department of Labor's Office of Workers' Compensation program ("OWCP") paid him. Def. 56.1 ¶ 14; Pl. 56.1 ¶ 14. While on OWCP, the Department of Labor pays an employee a percentage of his pre-injury rate of pay, and those benefits are not subject to income tax. Def. 56.1 ¶¶ 16, 17; Pl. 56.1 ¶¶ 16, 17. If an employee is on OWCP, the Department of Labor must determine that he is medically qualified for a position before he can return to work. *See* Def. 56.1 ¶¶ 20, 52, 53; Pl. 56.1 ¶¶ 20, 52, 53. Notwithstanding Pardo's removal from CBP in 2017, OWCP continues to pay Pardo to this day. *See* Def. 56.1 ¶ 18; Pl. 56.1 ¶ 18.

In December 2012, while on OWCP, Pardo attempted to return to his position as a CBP Officer, with various restrictions. Pardo emailed Richard Jacobowitz, "a CBP Management Information Specialist," stating: "I was approved to return to work on 12/10/2012 with modified activity if available. No use of handgun and no defensive tactics. No lifting over 2lb. No

pushing and/or pulling over 2lb of force.  Limited use of right hand." Def. 56.1 ¶ 28; Pl. 56.1 ¶ 28.  Pardo was citing the "approv[al]" and opinions of Dr. Neil Roth, who had performed his shoulder surgery [ECF #32 ¶ 89].  Def. 56.1 ¶ 28; Pl. 56.1 ¶ 28.  Jacobowitz responded that Pardo could not return to work as a CBP Officer unless and until certain things occurred.  Def. 56.1 ¶ 30; Pl. 56.1 ¶ 30.  In particular, a "light duty position" that met Pardo's medical requirements would have "to be available," Pardo's doctor would have to approve that position in writing, and Pardo's doctor would have to provide the date by which Pardo would "return to full duty."  Def. 56.1 ¶ 31; Pl. 56.1 ¶ 31.

In May 2013, Pardo's doctor, Lawrence Gulotta, submitted an evaluation that suggested Pardo could not return to his prior position as a CBP Officer.  *See* Def. 56.1 ¶ 32; Pl. 56.1 ¶ 32; AR_000367 (form stating, without elaboration, "unable to use right shoulder," "unable to push, pull, carry, lift").  CBP sent Pardo a letter stating that, for a determination whether Pardo could return to his prior position or a different position, Pardo would have to provide answers from his doctor, written "in narrative format," to an enclosed questionnaire.  Def. 56.1 ¶ 33; Pl. 56.1 ¶¶ 32, 33; AR_001259.  Pardo never provided those answers.  Def. 56.1 ¶¶ 34, 35; Pl. 56.1 ¶¶ 34, 35.  Pardo later testified that he did not provide the requested documentation because his doctor at the time required a $2,000 fee "for the narrative," and neither CBP nor the Department of Labor would pay the fee for his personal doctor to answer the required questions.  Def. 56.1 ¶¶ 34, 35, 36; Pl. 56.1 ¶¶ 34, 35, 36; AR_000437.  In June 2013, the Department of Labor arranged an examination with Dr. Jeffrey Lakin.  AR_000522.  He concluded that Pardo was "unable to perform his regular duties as an officer" for CBP and that it was "undetermined" when he could return to regular duty.  AR_000527.

Then, in November 2013, CBP directed Pardo to undergo a fitness for duty examination

("FFDE") pursuant to 5 C.F.R. § 339.301.  CPB explained that 5 C.F.R. § 339.301 is a regulation that allows CBP to require an employee in a position with medical standards and physical requirements to undergo an examination whenever there is a question about the employee's continued capacity to meet the job requirements, or if the employee is receiving workers' compensation, to determine if he can return to work in his prior position or another position. Def. 56.1 ¶¶ 37, 38; Pl. 56.1 ¶¶ 37, 38; AR_000488–000490.  The FFDE report stated that Pardo had a limited range of motion in his right shoulder and could not lift using that shoulder.  Def. 56.1 ¶ 39; Pl. 56.1 ¶ 39.  In 2014, two doctors, Dr. Howard Baruch and Dr. Candice Silvestre, opined that Pardo was "severely disabled," could not use a firearm, and was "not likely" to return to full duty as a CBP Officer.  Def. 56.1 ¶¶ 40–42; Pl. 56.1 ¶¶ 40–42.

In September 2014, CBP sent Pardo a letter stating that he could not perform the essential duties of his prior position as a CBP Officer and directing him to choose one of the following options: (1) complete an OF 612, a form similar to a resume, to ascertain any vacant positions for which he might qualify; (2) resign; or (3) retire.  Def. 56.1 ¶ 43; Pl. 56.1 ¶ 43; AR_000455– 000457 ("Options Letter").  The Options Letter stated that "if [Pardo] did not select one of those options, he would be subject to removal."  Def. 56.1 ¶ 43; Pl. 56.1 ¶ 43; *see* AR_000456– 000457.  It also directed Pardo to respond within 15 days of receipt.  Def. 56.1 ¶ 43; Pl. 56.1 ¶ 43; AR_000457.

Pardo responded to the Options Letter, but he did not select any of the options to avoid removal.  *See* Def. 56.1 ¶ 44; Pl. 56.1 ¶ 44.  Instead, Pardo identified a list of "inaccuracies and omissions," related to, for example, the year in which his Leave Without Pay status began and failures by the OWCP to pay him.  AR_000452.  He also noted that, although the Options Letter stated that it enclosed an OF 612 and a stamped, pre-addressed return envelope, he was not sent

those enclosures. *Id.* Pardo requested that CBP issue a "corrected letter," include the OF 612 and return envelope, as well as copies of the reports by Drs. Baruch and Silvestre, and extend the deadline for him to respond to 15 days after his receipt of that package. *Id.*; Def. 56.1 ¶ 45; Pl. 56.1 ¶¶ 44, 45.

CBP sent Pardo the OF 612 form, envelope, and reports he had requested, but Pardo still did not select one of the options. Def. 56.1 ¶ 47; Pl. 56.1 ¶¶ 47, 49. Pardo again responded that the Options Letter contained inaccuracies and requested this his deadline to respond be extended until 15 days after receipt of a corrected letter. Def. 56.1 ¶ 47; Pl. 56.1 ¶ 47. Defendant offers evidence that, in November 2014, CBP replied that, although it "looked into [Pardo's] concerns" and provided a number of responses, the alleged inaccuracies in the Options Letter were "not material" to the conclusion that Pardo was not fit for duty in his prior position and, again, directed him to select an option. AR_000437–000438. Pardo testified at his deposition that he never received the November reply, but he does not dispute that he never selected an option from the Options Letter or submitted his OF 612. Pl. 56.1 ¶¶ 48, 49.

CBP, nevertheless, sought to offer Pardo a new position. In early 2015, CBP identified a potential, vacant position for him as an Import Specialist. Def. 56.1 ¶ 51; Pl. 56.1 ¶ 51. Local CBP management requested that its human resources division submit the possible job offer to the Department of Labor, which needed to approve the offer because Pardo was on OWCP. Def. 56.1 ¶¶ 52, 53; Pl. 56.1 ¶¶ 52, 53. CBP also sent Pardo a letter stating that he needed to submit a resume within 15 days, so CBP could determine if he was qualified. Def. 56.1 ¶¶ 54, 55; Pl. 56.1 ¶¶ 54, 55. Pardo responded only that he could "neither accept nor reject the job offer" until he consulted with his doctor, and he did not submit a resume until nearly two months later. Def. 56.1 ¶¶ 56, 59; Pl. 56.1 ¶¶ 56, 59. CBP found that Pardo was qualified for the Import Specialist

position based on his resume.  AR_1751.  However, before the Department of Labor decided whether to approve the job offer, CBP informed it that the position was no longer available.  Def. 56.1 ¶ 60; Pl. 56.1 ¶ 60.

Pardo does not dispute that he could not perform his prior position because of his injury. *See* Def. 56.1 ¶ 50; Pl. 56.1 ¶ 50.  He also admits that he never "applied for" another position at CBP [ECF #47-1 ("Pl. Dep.") at 68].  Def. 56.1 ¶ 61; Pl. 56.1 ¶ 61.  He testified to his understanding that returning to work in any position "would be going against medical advice." Pl. Dep. at 68.  When asked at his deposition, "[w]ere you ever aware of a position that was available that would meet . . . [your] medical restrictions," Pardo responded, "Not that I know of. Never looked into it."  Def. 56.1 ¶ 62; Pl. 56.1 ¶ 62; Pl. Dep. at 68.

In June 2016, more than four years after Pardo last reported to work, CBP sent a letter to Pardo proposing to remove him.  Def. 56.1 ¶ 66; Pl. 56.1 ¶ 66; AR_000432–000434 ("Proposal Letter").  The Proposal Letter stated that the removal was for "non-disciplinary reasons, in order to promote the efficiency of CBP . . . . based on [Pardo's] unavailability for duty."  Def. 56.1 ¶ 66; Pl. 56.1 ¶ 66.  The Proposal Letter also noted that his removal from CBP did not mean that OWCP would stop compensating Pardo.  Def. 56.1 ¶ 68; Pl. 56.1 ¶ 68.

Even after issuing the Proposal Letter, CBP again sought approval from the Department of Labor to offer Pardo a vacant position as an Import Specialist.  CBP sent a letter requesting "prompt and urgent case review" because it had identified "an open job vacancy" within Pardo's commuting distance.  Def. 56.1 ¶ 69; AR_000111.  The Department of Labor stated that it could not make a determination because Pardo's medical documentation was outdated and a medical opinion on his ability to perform the job would be necessary.  Def. 56.1 ¶ 70; Pl. 56.1 ¶ 70.  CBP then "temporarily closed" its job search for Pardo, pending the Department of Labor obtaining

the medical opinion it required.  Def. 56.1 ¶ 71; Pl. 56.1 ¶ 71.  Pardo contends that, in any event, the job description for an Import Specialist was not consistent with his medical restrictions, and the parties dispute whether CBP had agreed to waive certain physical requirements, as necessary to accommodate his restrictions.  *See* Def. 56.1 ¶ 51; Pl. 56.1 ¶¶ 51, 69.

Pardo responded to the Proposal Letter, stating that it contained multiple inaccuracies and omissions.  Def. 56.1 ¶ 72; Pl. 56.1 ¶ 72.  However, he did not—and does not—dispute that he never returned to work after his January 2012 surgery and that he was not able to perform his previous duties as a CBP Officer.  Def. 56.1 ¶¶ 73, 75; *see* Pl. 56.1 ¶¶ 72, 75.  In February 2017, CBP issued a letter, authored by Robert Perez, sustaining its proposal to remove Pardo.  Def. 56.1 ¶ 76; Pl. 56.1 ¶ 76; AR_000071–000073 ("Removal Letter").  The Removal Letter stated that Pardo's "return to work" was "not feasible" because he was "unable to perform the full range of duties as a CBP Officer . . . , or in any capacity with [CPB]."  AR_000071.  It stated that, "[c]onsequently," Perez concluded that Pardo's "removal for non-disciplinary reasons is warranted and will promote the efficiency of [CPB]."  *Id.*

Starting in 2013, Pardo filed seven complaints with the Equal Employment Opportunity Commission ("EEOC").  He filed complaints on: (1) September 4, 2013; (2) November 19, 2014; (3) July 20, 2015; (4) September 6, 2016; (5) March 29, 2017; (6) May 15, 2018; and (7) August 8, 2018.  Def. 56.1 ¶ 110; Pl. 56.1 ¶ 110.  Pardo complained to the EEOC that CBP, *inter alia*, initially denied his request to restore certain annual leave, required him to undergo the FFDE, failed to give him an award that was given to his unit, cancelled an awards ceremony where he was one of the employees to be recognized, offered him a position as an Import Specialist, which was two grades lower than his Officer position, cancelled his health insurance for a time, and did not give him his badge and credentials upon his termination.  *See* TAC ¶¶ 22–

23, 34–35, 46–47, 56–57; *see also id.* ¶¶ 64, 67, 83, 153.

As a federal employee, Pardo challenged his removal before the Merit System Protection Board ("MSPB").  Pardo brought a "mixed case appeal," meaning that he challenged his removal based on claims of both illegal discrimination and "other types of prohibited personnel actions." 29 C.F.R. § 1614.302(a)(2) (defining a mixed case appeal before the MSPB); *Fernandez v. Chertoff*, 471 F.3d 45, 53 (2d Cir. 2006) (describing the framework).  Pardo asserted claims of disability discrimination, including a failure to accommodate his disability, retaliation for his EEOC complaints, and "harmful procedural error" by CBP.  AR_002068.  Pardo's claims of "harmful procedural error" were that CBP was required to make him a "valid" job offer before removing him, that it was required to wait until a doctor concluded that he reached "maximum medical improvement" ("MMI") from his injury before offering him any job, and that the Import Specialist job CBP identified for him was not a "valid" offer because it was a lower-graded position than his prior position as a CBP Officer.  AR_002088–AR_002089.  An Administrative Law Judge ("ALJ") held a hearing in May 2018.  *See* AR_001506.

Before the MSPB, Pardo argued, among other things, that his troubles at CBP began after he appeared in a 2006 training video with a beard.  *See* AR_ 002075–002077, AR_002083–002084.  He explained that he was diagnosed with cancer as a young man and, as a consequence of his condition and treatment, shaving irritated his face.  *See* AR_ 002075.  In 2004, CBP instituted a policy prohibiting facial hair, except for "medical, religious, or cultural reasons," and, in 2005, Pardo received an exemption from the policy.  *Id.*  In 2006, Pardo appeared in a training video wearing the beard, and Pardo testified that, shortly after it was released, a D.C.-based official told him that Pardo "having that beard in the video . . . caused a big problem in Headquarters."  AR_ 002076.

The MSPB upheld Pardo's removal.  AR_002048–002102.  With respect to his claim that CBP failed to accommodate his disability, the ALJ concluded that Pardo never made a request for a reasonable accommodation and that, in any event, CBP "made efforts to return [Pardo] to a position that met his medical restrictions."  AR_002072 –002073.  In rejecting Pardo's retaliation claim, the ALJ stressed that there was "simply no evidence" that Perez, the official who authorized Pardo's removal, "knew of his prior EEO activity."  AR_002082.  The ALJ also rejected Pardo's arguments that CBP committed harmful procedural error.  *See* AR_002088, AR_002090, AR_002094.  She explained that CBP was under no obligation to wait until Pardo reached "MMI" before removing him and found that CBP had made appropriate efforts to find him a suitable position.  AR_002094.

B. Procedural History

Pardo initiated this case in January 2019 [ECF #1].  He later filed his current pleading, the Third Amended Complaint [ECF #32 ("TAC")], which includes four counts.  Count One of the Third Amended Complaint asserts that the MSPB decision upholding his removal should be reversed.  TAC ¶¶ 281, 282.  As noted above, Pardo brought a mixed case appeal before the MSPB.  Thus, in Count One of the Third Amended Complaint, Pardo seeks this Court's review of the MSPB decision both (1) that Pardo's removal was not discriminatory or retaliatory, and (2) that CBP did not commit harmful procedural error in removing him.

In the next three counts, Pardo asserts statutory claims of discrimination, retaliation and hostile work environment.  These claims are based on both his removal and other alleged actions by CBP, short of removing Pardo, which were not before the MSPB.  Specifically, Count Two asserts claims under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*  TAC ¶¶ 283–88.  In particular, Pardo alleges that CBP discriminated against him "on account of his disability,"

including by failing to "reasonably accommodate" him.  *Id*. ¶¶ 283, 286.  He also alleges that CBP subjected him to a hostile work environment in violation of the Rehabilitation Act.  *Id*. ¶ 284.  Count Three asserts a claim for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, ("ADEA").[2]  *Id.* ¶¶ 289–95.  Count Four asserts claims for retaliation against Pardo, on account of protected activity—his EEOC complaints—in violation the Rehabilitation Act, the ADEA, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

In lieu of filing an answer to the Third Amended Complaint, Defendant requested leave to file a partial motion to dismiss and to stay discovery, which had already been underway for more than five months, pending the resolution of that contemplated motion [ECF #33].  Judge Schofield, to whom this case was previously assigned, denied those requests [ECF #34].  She directed the parties to proceed with fact discovery, which continued for several more months, and directed Defendant to combine its contemplated motion to dismiss with a later motion for summary judgment [ECF #34, 36, 38, 41].

Defendant moves for summary judgment on Pardo's claims of discrimination, retaliation, and hostile work environment [ECF #44, 45 ("Def. Mem."), 67].  Defendant first seeks summary judgment on the claims of discrimination and retaliation based on Pardo's removal, which the MSPB previously rejected.  Def. Mem. at 2.  Defendant then describes its motion with respect to the claims that were not before the MSPB—based on allegedly adverse actions by CBP short of Pardo's removal—as a motion "to dismiss, pursuant to Federal Rule of Civil Procedure 12(b), or,

---

[2] There are virtually no allegations or arguments about age discrimination in either the Third Amended Complaint or the briefs.  The Third Amended Complaint alleges only that Pardo included in his EEOC complaints an allegation of age discrimination, with a parenthetical stating his age at the time.  *See* TAC ¶¶ 150, 151, 152.  The Third Amended Complaint also includes two passing allegations that Pardo was receiving negative treatment because he was "an old white guy."  *Id*. ¶ 185; *accord id.* ¶ 186.  The MSPB decision never mentions a claim under the ADEA.

in the alternative, for summary judgment pursuant to [Rule] 56." Def. Mem. at 2. However, because both parties rely on materials "outside the pleadings" throughout their arguments, and there was ample time for "pertinent" discovery, the Court treats Defendant's motion as one for summary judgment only. Fed. R. Civ. P. 12(d).

Pardo opposes Defendant's motion for summary judgment and cross-moves for summary judgment reversing the decision of the MSPB [ECF #59, 61 ("Pl. Mem."), 75]. He specifically argues that the Court should reverse the ruling that CBP did not commit harmful procedural error in removing him. Defendant opposes Pardo's motion.

## II.    LEGAL STANDARDS

The Court reviews the claims of discrimination and retaliation based on Pardo's removal that he raised before the MSPB *de novo*. *See Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir. 1998). Review of the MSPB decision unrelated to discrimination or retaliation, on the other hand, is "extremely narrow." *United States Postal Serv. v. Gregory*, 534 U.S. 1, 6 (2001). A federal court may not set aside such decisions unless they are "unsupported by substantial evidence or are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 7703(c)).

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To create a genuine dispute of fact, the party opposing summary judgment must provide "hard evidence." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). "Conclusory allegations, conjecture, and speculation" are insufficient. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). A "mere . . . scintilla of evidence in support of the [non-moving party's] position" is also "insufficient."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  A court may not "weigh evidence" or make "credibility assessments" and must "draw all reasonable inferences" in favor of the non-moving party.  *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).  "However, in determining what may reasonably be inferred" from evidence in the record, a court should not afford the party opposing summary judgment "the benefit of unreasonable inferences, or inferences at war with undisputed facts."  *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990) (internal citation omitted).

## III.    DISCUSSION

It is sad that, following decades of distinguished service and a serious on-the-job injury, Pardo's career ended with his removal by CBP.  Perhaps Pardo was the victim of a maddening bureaucratic process, notwithstanding the evidence that Pardo failed to take actions to avoid his removal.  However, Pardo has not adduced evidence of illegal discrimination or other prohibited employment practices by CBP.

The Court first rules that Defendant is entitled to summary judgment on Pardo's claims, that he previously raised before the MSPB, that his removal was discriminatory and retaliatory. Next, the Court rejects Pardo's motion for summary judgment reversing the portion of the MSPB decision ruling that CBP did not commit harmful procedural error in removing Pardo.  Indeed, because there is no basis for the Court to reverse that ruling, Defendant is entitled to summary judgment on Pardo's claim with respect to procedural error.  Finally, the Court concludes that Defendant is entitled to summary judgment on Pardo's claims of discrimination, retaliation, and hostile work environment that were not before the MSPB.

A.  Pardo's Removal Was Not Discriminatory or Retaliatory.

The Court first reviews, *de novo*, the decision of the MSPB that Pardo's removal was not discriminatory or retaliatory.  Pardo argued before the MSPB that his removal violated the Rehabilitation Act and Title VII.  Specifically, he argued, and argues now, that CBP removed him on account of a disability, including by failing to accommodate his disability, and because of his protected activity, which consisted of seeking a waiver of the policy against beards and filing EEOC complaints.[3]  The Court concludes that Defendant is entitled to summary judgment on Pardo's claims of discrimination and retaliation based on his removal.  Defendant offers evidence that CBP's legitimate, non-discriminatory reason for removing Pardo was that, more than five years after his injury, Pardo was unable to return to work.  Pardo has not carried his burden to show that this reason was pretextual.

Claims of discrimination and retaliation under the Rehabilitation Act and Title VII are evaluated under the familiar burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Kho v. New York & Presbyterian Hosp.*, 344 F. Supp. 3d 705, 717 (S.D.N.Y. 2018).  To survive a motion for summary judgment, the plaintiff must carry his initial burden to establish a *prima facie* case of discrimination or retaliation.  *Id.*  The burden then shifts to the employer to offer evidence of a "legitimate, nondiscriminatory reason" for the adverse action.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).  *Id.*

---

[3] Pardo also asserts claims for discrimination and retaliation in violation of the ADEA.  However, as noted above, there are virtually no allegations or arguments about age discrimination in the Third Amended Complaint or briefs. *Supra* note 2.  It is not clear whether Pardo raised these claims before the MSPB.  The MSPB never mentions the ADEA.  It does, however, note that Pardo testified that, at some point before his shoulder injury, he inquired about the possibility of a less physically demanding job because he was "getting older," and there was apparently some colloquy about whether Pardo considered this inquiry a request for a reasonable accommodation of a disability. AR_002069–AR_002070.  Even leaving aside questions of exhaustion, the Court would conclude that Defendant is entitled to judgment as a matter of law on all claims under the ADEA because there are simply no allegations in the Third Amended Complaint or evidence in the record to sustain such claims.  The Court, therefore, does not address the ADEA claims further, either with respect to the MSPB decision, or as new statutory claims.

(quoting *McDonnell Douglas*, 411 U.S. at 802).  If the employer offers such evidence, "the burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext.'"  *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804).

To establish a *prima facie* case of disability discrimination under the Rehabilitation Act, a plaintiff must show that: (1) his employer is subject to the Act; (2) he suffers from a disability within the meaning of the Act; (3) he was qualified and able to perform the essential functions of his job, with or without reasonable accommodation; and (4) "either his employer failed to make such reasonable accommodations (failure to accommodate theory) or his termination occurred under circumstances giving rise to an inference of discrimination (wrongful discharge theory)." *Daley v. Cablevision Sys. Corp.*, 2016 WL 880203, at *4 (S.D.N.Y. Mar. 7, 2016), aff'd, 675 F. App'x 97 (2d Cir. 2017); *see also Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2668, 206 L. Ed. 2d 822 (2020).

To establish a *prima facie* case of retaliation under the Rehabilitation Act or Title VII, a plaintiff must demonstrate: (1) participation in a protected activity; (2) defendant's knowledge thereof; (3) materially adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.  *See Soto v. Marist Coll.*, 2019 WL 2371713, at *9 (S.D.N.Y. June 5, 2019); *Tsismentzoglou v. Milos Estiatorio Inc.*, 2019 WL 2287902, at *4 (S.D.N.Y. May 29, 2019); *Natofsky*, 921 F.3d at 353.  A causal connection can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.  *Natofsky*, 921 F.3d at 353. "While temporal proximity can support an inference of retaliation for purposes of establishing a

*prima facie* case, the proximity must be very close." *Dhar v. City of New York*, 655 F. App'x

864, 865- 66 (2d Cir. 2016).

1.  Pardo Fails To Establish a *Prima Facie* Case Based on his Beard.

In his brief, Pardo appears to rest his Rehabilitation Act claims primarily on the medical

condition that required him to have a beard (the cancer diagnosis and treatment that made

shaving his face irritating), rather than his shoulder injury.  Pardo argues that, after he appeared

in a 2006 training video with the beard, CBP began "a series of retaliatory actions against [him]

. . . which culminated in his removal."  Pl. Mem. at 9.  He argues that CBP "seized upon" his

injury to remove him in 2017—eleven years after the video and more than five years after the

injury.  *Id*. at 11.

Pardo fails to establish a *prima facie* case of discrimination or retaliation because of his

beard.  It is undisputed that, in 2005, CBP granted his request for an exemption from the policy

against beards.  Def. 56.1 ¶ 104; Pl. 56.1 ¶ 104; Pl. Dep. at 129–132.  It is also undisputed that

CBP changed its policy, such that anyone in Pardo's position could have a beard without needing

an exemption, long before Pardo's removal.  Def. 56.1 ¶ 105; Pl. 56.1 ¶ 105.  Moreover, Pardo

filed his first EEO complaint in 2013—seven years after he appeared in the 2006 training video.

*See* Def. 56.1 ¶ 110; Pl. 56.1 ¶ 110; TAC ¶ 22.

Pardo contends that CBP management had it in for him after the video, but Pardo fails to

offer more than a "scintilla of evidence" for this contention.  *Anderson*, 477 U.S. at 252.  Pardo

offers his own testimony that one D.C.-based official told Pardo that his "having that beard in the

video . . . caused a big problem in Headquarters."  AR_ 002076; *see also* Pl. Dep. 138–39

(stating that Pardo did not know who at headquarters was upset with him but "could make wild

guesses"); *Khudan v. Lee*, No. 12-cv-8147 (RJS), 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8,

2016) (plaintiff's self-serving testimony was not sufficient to create a genuine dispute of fact in light of defendant's documented evidence).  Pardo's conclusory assertion that "Defendant suppressed the [2006] video" is not evidence, Pl. Mem. at 9; *see Kerzer*, 156 F.3d at 400, even if failing to promulgate a video of Pardo could be construed as an adverse action, which it cannot, *cf. Ortiz v. Metro. Transp. Auth.*, 615 F. App'x 702, 704 (2d Cir. 2015).

The record establishes that Pardo continued to receive numerous awards and appeared in multiple CBP media events after the 2006 video.  AR_000093–000099 (resume, updated through 2009, listing 23 awards and five media events between 2007 and 2009).  Furthermore, Perez, the official who authorized Pardo's removal, testified that Pardo was "outstanding" at his job and held a "highly regarded position" before his injury.  AR_001675; *see* AR_001686.  Perez also made clear that he did not know "the circumstances" of Pardo's beard and did not consider it unusual.  AR_001687; *see* AR_00169.

In light of the evidence in the record, no reasonable fact-finder could infer that Pardo was terminated because of his beard, the medical condition that required him to have it, or his request for an exemption to keep it.  Pardo's "[c]onclusory allegations, conjecture, and speculation" that unspecified members of CBP management disliked him after he appeared in the 2006 video with a beard do not support a reasonable inference that his beard had anything to do with his removal eleven years later.  *Kerzer*, 156 F.3d at 400.  The Court, therefore, concludes that Pardo fails to establish a *prima facie* case of discrimination or retaliation based on his beard.

2.  Defendant Offers Evidence of a Legitimate, Non-Discriminatory Reason for Removal.

Defendant offers undisputed evidence that CBP's legitimate, non-discriminatory reason for removing Pardo was that, more than five years after his injury, he was unable to return work. There is no dispute that, in 2011, Pardo suffered a serious, on-the-job injury to his right should.

Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11.  There is also no dispute that, after undergoing surgery in January

2012, Pardo never returned to work.  Def. 56.1 ¶ 12; Pl. 56.1 ¶ 12.  Pardo does not dispute that,

at the time of his removal, he could not perform his "prior job" as a CBP Officer.  *See* Def. 56.1

¶ 50; Pl. 56.1 ¶ 50.  Indeed, Pardo testified that, at some point, he had concluded that returning to

work in any position at CBP "would be going against medical advice."  Pl. Dep. at 68; *see also*

Def. 56.1 ¶¶ 61, 62; Pl. 56.1 ¶¶ 61, 62.  In its letters proposing to remove Pardo and sustaining

that proposal, CBP stated that his removal was for "non-disciplinary reasons," "to promote the

efficiency of CBP," "based on [Pardo's] unavailability for duty."  Def. 56.1 ¶¶ 66, 78; Pl. 56.1 ¶¶

66, 78.  While Pardo raised a number of issues in response to the Proposal Letter, he did not

challenge its conclusion that he was unable to perform his duties as a CBP Officer.  Def. 56.1 ¶

75; Pl. 56.1 ¶ 75.  Rather, Pardo "noted that he had not yet reached MMI," maximum medical

improvement, in his efforts to recover from his shoulder injury Pl. 56.1 ¶ 75.  Moreover, at the

administrative hearing, Perez testified that holding open Pardo's position left CBP with one

fewer officer to perform essential duties.  AR_001685.

    CBP was not required to hold open Pardo's position "indefinitely" while he "attempt[ed]

to recover."  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000).  Under the

relevant civil service statute, CBP was required to hold open his position for only one year after

his injury.  5 U.S.C. § 8151(b)(1).  The case law on disability discrimination claims is clear that a

plaintiff's unavailability to return to work after a period of leave, including unavailability

because of a disabling injury or medical condition, is a legitimate, non-discriminatory reason for

termination.  *See Scott v. Mem'l Sloan-Kettering Cancer Ctr.*, 190 F. Supp. 2d 590, 597

(S.D.N.Y. 2002); *Daley v. Cablevision Sys. Corp.*, 2016 WL 880203, at *6 (S.D.N.Y. Mar. 7,

2016) (defendant's argument that "indefinite leave would impose an undue hardship on [it]" was

a "legitimate, nondiscriminatory" reason for termination), *aff'd*, 675 F. App'x 97 (2d Cir. 2017); *cf. Holowecki v. Fed. Exp. Corp.*, 382 F. App'x 42, 46 (2d Cir. 2010) (affirming summary judgment on age discrimination claims against plaintiffs "terminated following medical leaves of absence," explaining that plaintiffs failed to make a *prima facie* case of discrimination because they failed to show that they were qualified to work in light of evidence that they were "unable to return to work" or failed to report for work).

3.  CBP Did Not Fail To Reasonably Accommodate Pardo.

Although Pardo does not dispute that he could not perform his pre-injury duties as a CBP Officer, he argues that CBP failed to reasonably accommodate his disability by "find[ing]" Pardo "a suitable position." *See* Pl. Mem. at 13.  A reasonable accommodation may include "modification of job duties" and, in "certain circumstances," reassignment to a vacant position. *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009).  An employer is not required to eliminate essential functions of a job to accommodate a disability, and a "court must give substantial deference to an employer's judgment as to whether a function is essential to the proper performance of a job." *Id.* at 97–98.  Moreover, the plaintiff "bears the burdens of both production and persuasion as to the existence of [an] accommodation," including "the existence, at or around the time when accommodation was sought, of an existing vacant position to which [he] could have been reassigned." *Id.* at 97–98.

The plaintiff must "work together" with the employer in "an interactive process" required to make reasonable accommodations. *Id.* at 99.  As part of that interactive process, an employer is entitled to request medical documentation. *See Quadir v. New York State Dep't of Labor*, 2016 WL 3633406, at *4 n.3 (S.D.N.Y. June 29, 2016) (collecting cases).  If the plaintiff failed to engage in the process, such as by refusing to provide medical information or otherwise

resisting efforts to return him to work, the employer cannot be liable for failing to accommodate the plaintiff's disability. *See Robinson v. American Int'l Grp. Inc.*, 2009 WL 3154312, at *6-7 (S.D.N.Y. Sept. 30, 2009); *Daley*, 2016 WL 880203, at *6.

The defendant first argues that Pardo never requested a reasonable accommodation, and "Defendant cannot be liable for denying a reasonable accommodation request that was never made." Def. Mem. at 24 (citing *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73 (2d Cir. 2019) (Plaintiff "has not identified a reasonable accommodation that [defendant] refused to provide."). It is undisputed that, in December 2012, Pardo sought to return to his position as a CBP Officer with various restrictions. Def. 56.1 ¶ 28; Pl. 56.1 ¶ 28. Pardo emailed Jacobowitz, stating that he could "return to work on 12/10/2012 with modified activity if available." Def. 56.1 ¶ 28; Pl. 56.1 ¶ 28. The proposed modifications were: "No use of handgun and no defensive tactics. No lifting over 2lb. No pushing and/or pulling over 2lb of force. Limited use of right hand." Def. 56.1 ¶ 28; Pl. 56.1 ¶ 28. Pardo maintains that he "considered this . . . a request for a reasonable accommodation." Pl. Mem. at 13.

To survive summary judgment, however, Pardo must make "a sufficient showing that, with reasonable accommodation, [he] could perform the essential functions of the relevant job." *McBride*, 583 F.3d at 97. Pardo has failed to make such a showing with respect to his prior role as a CBP Officer. For example, Defendant offers evidence that carrying a firearm was an essential function of the job. *See id.* at 98 ("Evidence of whether a particular job duty constitutes an essential function includes . . . the "written [job] description); Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6 (admitting that "the description of [Pardo's] position" states that the employee "is required to carry a firearm"). CBP was entitled to conclude that accommodating Pardo's restrictions would

require eliminating "essential functions" of the CBP Officer position. *McBride*, 583 F.3d at 98. Defendant cannot be liable on that basis.

Pardo has likewise failed to "demonstrate the existence, at or around the time when [the] accommodation was sought, of an existing vacant position to which [he] could have been reassigned." *Id.* at 97–98. There is no dispute that Pardo never "applied for" another position at CBP. Def. 56.1 ¶ 61; Pl. 56.1 ¶ 61. Indeed, Pardo testified that he was never "aware of" another, available position that would meet his "medical restrictions" because he "[n]ever looked into it." Def. 56.1 ¶ 62; Pl. 56.1 ¶ 62; Pl. Dep. at 68. More importantly, even after discovery, Pardo has not offered evidence of a vacant position that he was qualified to perform. *See McBride*, 583 F.3d at 97, 98. To be sure, in 2015 and 2016, CBP identified vacant Import Specialist positions that CBP concluded Pardo could perform with restrictions. *See* Def. 56.1 ¶¶ 51, 69; AR_1751; AR_000111. Pardo, however, maintains that he was not medically qualified for those positions. *See* Pl. 56.1 ¶¶ 51, 69.

Defendant also argues that CBP attempted to find Pardo a suitable position, but Pardo did not cooperate. It is undisputed that CBP requested certain medical information "in a narrative format," but Pardo never provided the requested documentation. *See* Def. 56.1 ¶¶ 33, 34, 35; Pl. 56.1 ¶¶ 33, 34, 35. It is likewise undisputed that CBP informed Pardo that he was required to submit an OF 612, a form similar to a resume, for CBP to find a vacant position for him and that failing to submit the form could result in his removal, but Pardo never submitted an OF 612. *See* Def. 56.1 ¶¶ 43, 44, 47; Pl. 56.1 ¶¶ 43, 44, 47, 49; AR_000455–000457.

Pardo offers explanations for his refusal to provide the requested documentation—*i.e.* the cost of obtaining the narrative from his personal doctor and inaccuracies in the Options Letter— and argues that CBP did not really need the documents it was requesting, anyway. *See* Pl. 56.1 ¶

20

34 (arguing that Dr. Lakin later "answered the questions posed by the Agency in its request for

the narrative"); Pl. Mem. at 25 (complaining that CBP had a version of Pardo's resume on file

"all along").  The Court has no doubt that it may have been extremely burdensome to satisfy all

of the requests for documentation from both CBP and the Department of Labor.  However, Pardo

cannot maintain that CBP failed to make a "good faith" effort to find him a suitable position that

met his medical requirements in the face of undisputed evidence that Pardo failed at several

points to "work together" with CPB in the "interactive process" required to place him in such a

position. *McBride*, 583 F.3d at 99.

    4.  <u>Pardo Fails To Show Pretext.</u>

       As explained above, Defendant offers evidence that CBP removed Pardo because Pardo

was unable to return to his prior position and, after several attempts, CBP was unable to find a

vacant, alternative job for which he was qualified.  These are legitimate, non-discriminatory and

non-retaliatory reasons for termination.  Thus, to survive summary judgment, Pardo must show

that these reasons were pretextual.

       Pardo fails to show that Defendant's proffered reasons for his removal were pretext for

discrimination and retaliation.  Pardo first cites an example of what he describes as evidence of

discriminatory animus.  Specifically, in his brief, Pardo cites an email in which Jacobowitz wrote

that CBP was attempting to "offer [Pardo] a position but he seems to be stalling the process and

not cooperating.  What can we do??????."  Pl. Mem. at 24.  Pardo asserts that this "statement

was meant to besmirch [Pardo's] character."  *Id.*  However, Pardo's "speculation" that

Jacobowitz intended to besmirch Pardo is not evidence that can raise a genuine issue of fact.

*Kerzer*, 156 F.3d at 400.  Indeed, while the Court must draw all reasonable inferences in Pardo's

favor, it should not afford him "the benefit of unreasonable inferences, or inferences at war with

undisputed facts." *Long Island Lighting Co.*, 907 F.2d at 1318.  In the light of the undisputed

facts, the reasonable inference from the email that Pardo cites is that Pardo was not cooperating

with CBP in the interactive process required to return him to work in an alternative position.  At

minimum, the content of this email certainly "provides no basis to conclude that [Jacobowitz]

had discriminatory intent."  *Natofsky*, 921 F.3d at 352.

Pardo then stresses that Jacobowitz inappropriately referred to Pardo's EEOC complaints

in an email that also mentioned the possibility of removing Pardo.  Pl. Mem. at 26.  He cites an

email in which Jacobowitz stated, "It has been challenging as we also have to provide responses

to Mr. Pardo's EEO Complaints . . . along the way."  Pl. 56.1 ¶ 181.  The email is, at best, a

"scintilla" of evidence in Pardo's favor.  *Anderson*, 477 U.S. at 252.  The record establishes that

Jacobowitz was responding to an inquiry about a claim raised in one of Pardo's EEOC

complaints.  *See* AR_000988.  In that email, he also mentioned that CBP was in the process of

attempting either to place Pardo in a suitable alternative job, or to remove him from the rolls.  *Id.*

It might have been best practice to avoid mentioning EEOC activity and the possibility of

removal in the same communication, but this email, by itself, is not sufficient to raise a material

dispute as to pretext for retaliation.

The Court notes that it was Perez, not Jacobowitz, who authorized Pardo's removal, and

Perez testified that he "had no knowledge" of Pardo's EEOC activity.  AR_002082 –002084.

The Court also notes that temporal proximity is "insufficient to satisfy [a plaintiff's] burden to

bring forward some evidence of pretext" at the summary judgment stage.  *El Sayed v. Hilton*

*Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).  In any event, the CBP issued the February 2017

Removal Letter more than five months after Pardo's most recent previous EEOC complaint.  *See*

Def. 56.1 ¶¶ 76, 110; Pl. 56.1 ¶¶ 76, 110.

Based on the Court's *de novo* review of the claims of discrimination and retaliation that Pardo asserted before the MSPB, Defendant is entitled to summary judgment, under Rule 56(a), on the claims that Pardo's removal violated the Rehabilitation Act and Title VII, as well as any such claim under the ADEA.  Pardo fails to offer any evidence to support a reasonable inference that CBP removed him because of his beard.  Moreover, it is irrelevant whether Pardo can establish a *prima facie* case of discrimination or retaliation based on his shoulder injury, EEOC complaints, or age because Defendant offers evidence of legitimate, non-discriminatory reasons for Pardo's removal.  Specifically, it offers evidence that CBP removed Pardo because he was unavailable to return to work after five years of leave, despite documented efforts by CBP to attempt to find him a suitable position.  Pardo has failed to offer any "hard evidence" to suggest these legitimate, non-discriminatory reasons for his removal were pretext.  *D'Amico*, 132 F.3d at 149.  Thus, the Court grants Defendant's motion for summary judgment with respect to Pardo's claims of discrimination and retaliation based on his removal.

B.  The Court Lacks Any Basis to Set Aside the Rest of the MSPB Decision.

Pardo moves for summary judgment reversing the ruling of the MSPB that CBP did not commit any harmful procedural error in removing Pardo.  Specifically, Pardo argued before the MSPB, and argues now, that CBP failed to make any "good faith" effort to make Pardo a "valid" job offer before removing him and that CBP was required to wait until a doctor concluded that he reached "maximum medical improvement" ("MMI") from his injury before attempting to return him to work in any position.  AR_002088–AR_002089; Pl. Mem. at 1, 3–4.  Pardo further argues that his removal did not promote the efficiency of CBP, was premature, and was too harsh a penalty.  *See* Pl. Mem. at 1, 18–19.

Judicial review of MSPB rulings that do not involve discrimination claims is confined to the administrative record. *Murray v. U.S. Dep't of Justice*, 821 F. Supp. 94, 108 (E.D.N.Y.), aff'd, 14 F.3d 591 (2d Cir. 1993). The Court's review is "extremely narrow." *Gregory*, 534 U.S. at 6. It may not set aside the MSPB decision unless it was "unsupported by substantial evidence or [was] 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id*. (quoting 5 U.S.C. § 7703(c)).

Pardo fails to offer the Court any basis for reversing the MSPB ruling that CBP did not commit harmful procedural error in removing him. The Court has already rejected the argument that CBP did not make good faith efforts to find Pardo a suitable alternative position. The ALJ explained, and the administrative record supports, that CBP was not required to wait until Pardo reached "MMI" before either attempting to reassign him to a suitable position, or removing him. AR_002094. As the ALJ pointed out, accepting Pardo's position would require concluding that a person who never reached MMI could never be returned to work or removed. AR_002090. The ALJ also cited evidence in the administrative record that Pardo was removed to promote the efficiency of CBP and reasonably concluded that Pardo's removal, after five years of leave, was neither premature, nor unreasonably harsh. AR_002064–AR_002066. Because the Court has no basis for setting aside the MSPB decision, and judicial review of such a decision is confined to the administrative record, the Court must not only deny Pardo's request for summary judgment, but also grant summary judgment on this claim to Defendant.

C.  Defendant Is Entitled to Judgment on Pardo's New Claims.

In the Third Amended Complaint, Pardo asserts a number of new claims—*i.e.* claims that were not previously before the MSPB—of discrimination, retaliation, and hostile work environment based on allegedly adverse actions other than his removal. All of these claims are

based on administrative errors and issues that arose while Pardo was on leave.  For most of these claims, Pardo fails to allege any adverse employment action.  Others fail because Pardo fails to offer any evidence to rebut Defendant's proffered non-discriminatory, non-retaliatory reasons for CBP's actions.

First, Pardo asserts claims based on an alleged denial of annual leave.  TAC ¶¶ 177–89, 271–80.  However, there is no dispute that the CBP ultimately restored the leave.  Def. 56.1 ¶ 117; Pl. 56.1 ¶ 117.  As such, Pardo fails to allege an adverse employment action sufficient to establish a *prima facie* case of either discrimination or retaliation.  *See Malcolm v. Honeoya Falls Lima Cent. Sch. Dist.*, 483 Fed. App'x 660, 662 (2d Cir. 2012); *Viruet v. City of New York*, 2019 WL 1979325, at *14 (S.D.N.Y. May 3, 2019).

Pardo also asserts claims of discrimination and retaliation based on CBP directing him to undergo the FFDE, as well as a "referee exam" to resolve conflicting medical opinions.  TAC ¶¶ 64–71, 190–98.  Again, Pardo cannot establish a *prima facie* case because requiring an employee to undergo a "fitness for duty evaluation" or similar medical evaluation related to a disability, "is not evidence of an adverse employment action."  *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 17 (2d Cir. 2011).  CBP was entitled to request such evaluations, even though they were "a pain in the neck."  Pl. Dep. at 174.

Next, Pardo asserts claims based on his delayed receipt of a unit citation award and the cancellation of an award ceremony in which Pardo was one of the employees to be recognized.  TAC ¶¶ 199–208, 218–26, 227–34.  It is undisputed that Pardo ultimately received the awards in the mail.  Def. 56.1 ¶¶ 132, 137, 146; Pl. 56.1 ¶¶ 132, 137, 146.  Mere delays in receiving the awards were not adverse actions sufficient for a *prima facie* case of either discrimination or retaliation.  *See Malcolm*, 483 Fed. App'x at 662.  For purposes of the discrimination claim, even

the denial of a non-monetary award—which did not happen here—would not constitute an adverse action. *See Ortiz v. Metro. Transp. Auth.*, 615 F. App'x 702, 704 (2d Cir. 2015); *Hodges v. Sessions*, 2018 WL 4232918, at \*4 (S.D.N.Y. Sept. 5, 2018).

With respect to the retaliation claim, a plaintiff could, perhaps, argue that the cancellation of an award ceremony at which he was supposed to be recognized could dissuade him from exercising his rights. However, Defendant offers a legitimate reason for the cancellation. Both sides agree that the awards ceremony was supposed to include members of the Bermuda Police Department, and Defendant offers evidence that difficulties scheduling the ceremony with the Bermuda Police is what prevented it from occurring. Def. 56.1 ¶¶ 140, 141, 142, 143; Pl. 56.1 ¶¶ 140, 142. Pardo contends that this reason was a pretext, but he offers no evidence for his contention. Pl. 56.1 ¶¶ 141, 142, 143. Instead, here merely states that, in his "30+ years of distinguished service, where he was the recipient of over 100 awards" he "never had a single [other] award presentation canceled." Pl. 56.1 ¶¶ 142, 143. Pardo asks the Court to infer an impermissible motive, but offers absolutely no "hard evidence," *D'Amico*, 132 F.3d at 149, from which such an "inference . . . may be drawn," *Binder & Binder*, 481 F.3d at 148. As such, the Court concludes that Defendant is entitled to judgment as a matter of law on Pardo's claim based on the canceled award ceremony.

Next, Pardo asserts claims of discrimination and retaliation based on the Options Letter, the attempt to offer him the Import Specialist job, and a "reassignment" from the Port of Newark to Newark International Airport that took place while he was on leave. TAC ¶¶ 209–17, 235–44, 263–65. With respect to the Options Letter and identification of the Import Specialist job offer, Pardo clearly fails to allege an adverse action for purposes of either discrimination or retaliation

claims. These were simply letters seeking information from Pardo in connection with CBP's efforts to return Pardo to work.

Pardo also fails to allege an adverse employment action for purposes of a discrimination claim based on his "reassignment" to Newark Airport while he was on leave. It is undisputed that the reassignment did not affect his pay, seniority, or benefits. Def. 56.1 ¶ 151; Pl. 56.1 ¶ 151. Nor did it affect Pardo's duties. He had no duties and never had to report to work at the new location because he was on leave. Def. 56.1 ¶ 152; Pl. 56.1 ¶ 152. Pardo alleges that the reassignment was retaliatory and argues that it affected his reputation. Pl. 56.1 ¶ 152. However, Defendant offers a non-retaliatory reason for the change, citing a "Bid Rotation and Placement" process based on seniority. Def. 56.1 ¶ 149. Pardo disputes that this was the reason, but he fails to offer any evidence to the contrary. *See* Pl. 56.1 ¶¶ 149, 150. As such, Pardo fails to raise a genuine dispute as to pretext.

Pardo also asserts claims based on issues with his health coverage. In particular, Pardo's health insurance was canceled for approximately one month, and, separately, there was delay in switching his coverage from a family plan to a single plan. TAC ¶¶ 245–62. There is no dispute that these problems occurred, but there is also no dispute that they were corrected without monetary cost to Pardo. *See* Def. 56.1 ¶¶ 153, 154, 156, 162, 163, 164; Pl. 56.1 ¶¶ 153, 154, 156, 162, 163, 164. The Court has no doubt that the temporary cancelation of his health insurance, in particular, caused Pardo significant distress. Pl. 56.1 ¶ 156. However, Defendant offers evidence that the issues with Pardo's health insurance were the result of administrative errors, due in part to confusion about his OWCP status. Def. 56.1 ¶ 157. Pardo responds that this explanation is "suspicious," Pl. 56.1 ¶ 233, but this response is not sufficient to raise a dispute that it was pretextual.

Pardo next asserts claims based on the failure of CBP to provide him with his badge and credentials upon his removal.  TAC ¶¶ 266–70.  CBP Officers who retire or resign in good standing receive these items as mementos of their service.  Def. 56.1 ¶¶ 165, 166, 168; Pl. 56.1 ¶¶ 165, 166, 168.  CBP's written policy provides that terminated employees are not permitted to retain their badge or credentials, although exceptions can be made for certain employees who request a waiver in writing.  Def. 56.1 ¶¶ 165, 166, 168, 171; Pl. 56.1 ¶¶ 165, 166, 168, 171.  There is no dispute that Pardo did not retire or resign; rather, he was removed.  *See* Def. 56.1 ¶¶ 169, 170; Pl. 56.1 ¶¶ 169, 170.  Indeed, Pardo frequently refers to his removal as a "termination."  Pl. Mem. at 1, 3, *passim*.  There is also no dispute that Pardo did not submit a written request for an exception to retain his badge and credentials.  Def. 56.1 ¶ 174; Pl. 56.1 ¶ 174.  It is a shame that, after decades of distinguished service, Pardo was denied the opportunity to save his badge and credentials as a memento.  However, Pardo has no offered evidence that he was not granted his badge or credentials on the basis of discrimination or retaliation, rather than on the basis of CBP policy.

Finally, Pardo asserts a hostile work environment claim based on all of the allegations described above, but this claim is not an appropriate vehicle for Pardo's allegations.  A hostile work environment claim is actionable when the work environment is "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of plaintiff's employment were thereby altered."  *Farina*, 458 Fed. App'x at 16–17.  It is "not the proper vehicle" to assert claims based on discrete, allegedly discriminatory acts.  *Pratt v. Brennan*, 2020 WL 364195, at *5 (S.D.N.Y. Jan. 21, 2020).  Pardo offers no allegations of the kind of pervasive "ridicule" and "insults" that generally support a hostile work environment claim.  *Farina*, 458 Fed. App'x at 16–17.  Moreover, "it is axiomatic that a plaintiff must be working to suffer from a

hostile work environment." *Velez v. New York City Police Pension Fund Article II*, 2019 WL 1382884, at *9 (S.D.N.Y. Mar. 27, 2019).  Pardo's claim, however, is based on incidents that all occurred while Pardo was on leave.

       For the forgoing reasons, the Court concludes that Defendant is entitled to judgment as a matter of law on each of Pardo's newly asserted claims of discrimination, retaliation, and hostile work environment.

## IV.    CONCLUSION

       For the reasons set forth above, Defendant's motion for summary judgment [ECF #44] is GRANTED, and Pardo's cross-motion [ECF #59] is DENIED.  Because the Court grants summary judgment to Defendant on all of the claims asserted in the Third Amended Complaint, the Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Date:  **March 24, 2020**
      **New York, NY**

                                           **MARY KAY VYSKOCIL**
                                           **United States District Judge**